# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY LEE, | ) |
| Plaintiff, | ) |
| | ) No. 12-cv-09180 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| CHICAGO TRANSIT AUTHORITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gregory Lee, appearing *pro se*, claims that his former employer, Defendant Chicago Transit Authority ("CTA"), violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* by terminating him on account of his disability rather than providing him with a reasonable accommodation. Before the Court is the CTA's motion to dismiss Lee's third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 73.) For the reasons stated below, the motion is granted. As Lee now has failed multiple times to state a valid claim, his complaint is dismissed with prejudice.

## BACKGROUND

The complaint currently before the Court constitutes Lee's fourth attempt to plead a claim for disability discrimination. Lee's initial complaint in this matter alleged violations of the ADA and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and sought relief not just for Lee but also on behalf of a putative class of disabled CTA employees who had been unlawfully disciplined or terminated because of their disabilities. (*See* Dkt. No. 10.) The CTA's motion to dismiss that complaint was granted and the complaint was dismissed without prejudice in an oral ruling during the parties' initial status hearing. (*See* Dkt. Nos. 17, 22.) Lee then filed his

first amended complaint, again alleging violations of the ADA and Title VII, but this time also suggesting a claim for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. (*See* Dkt. No. 23.) After the CTA filed a second motion to dismiss along with its answer and affirmative defenses, Lee was granted leave to file a second amended complaint to remove the reference to age discrimination, which he asserted had been made in error. Like his original complaint, Lee's second amended complaint alleged violations of the ADA and Title VII. (*See* Dkt. No. 36.) The CTA once again filed a motion to dismiss, which was fully briefed by the parties. The Court granted the motion and again dismissed the complaint without prejudice, providing Lee one final opportunity to state a viable claim. (*See* Dkt. No. 65.) In its memorandum opinion and order, the Court provided a detailed explanation of the second amended complaint's pleading deficiencies along with clear guidance as to what Lee must allege to state a claim for disability discrimination. (*See* Dkt. No. 66.) Lee has now filed a third amended complaint in which he alleges the following.[1]

When the events giving rise to this lawsuit occurred, Lee was employed as a Transportation Manager for the CTA. (Third Am. Compl. ¶ 4, Dkt. No. 68.) In February 2010, Lee became ill while at work and was transported to the hospital in an ambulance. (*Id.* ¶ 10.) He subsequently requested and was approved for short-term disability leave. (*Id.* ¶¶ 10, 25.) While on leave, Lee received a letter from the CTA instructing him to report to the office of CTA General Manager Carlton Rutherford on August 16, 2010 to discuss "[his] continued inability to perform the essential functions of [his] position." (*Id.* ¶ 12 & Ex. 4.) Lee met with Rutherford as instructed and informed Rutherford that he would not be released from medical treatment and able to report

---

[1] For purposes of deciding this motion, the Court accepts as true all well-pleaded factual allegations set forth in the third amended complaint and views them in the light most favorable to Lee. *See, e.g., Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)).

to work until late October or early November of 2010. (*Id.* ¶ 13.) According to Lee, that statement constituted a request for a reasonable accommodation for his disability. (*Id.*) Approximately two weeks after his meeting with Rutherford, Lee received a letter from the CTA stating that he was being administratively separated because he had exhausted his Family and Medical Leave Act ("FMLA") leave. (*Id.* ¶ 14 & Ex. 5.) Following his release from medical treatment in November 2010, however, the CTA reinstated Lee to the position of Transportation Manager. (*Id.* ¶ 15.)

Starting in April 2011, Lee again began to experience health issues. (*Id.* ¶ 16.) He alleges that he was instructed to contact "Ann Cobb at CTA's central office" to discuss reasonable accommodations for those issues. (*Id.*) Over the next several weeks, he left a number of messages for Cobb but received no response. (*Id.* ¶ 17.) In August or September of 2011, Lee spoke with Cobb directly. (*Id.*) She instructed him to file a form and told him that he would receive a response once the form had been reviewed by a committee. (*Id.*) In addition to those communications with Cobb, Lee also alleges that during a November 2011 meeting, he attempted to discuss "his ADA issue" with CTA Acting General Manager Sonnetta Luckey. (*Id.* ¶ 18.) According to Lee, Luckey responded by threatening to have him drug tested and taken out of service. (*Id.*)

Then, on November 11, 2011, Lee once again became ill at work and was taken to the hospital in an ambulance, after which he again requested and was approved for short-term disability leave. (*Id.* ¶¶ 19, 26.) The CTA instructed Lee to contact Luckey on a weekly basis during his leave to provide "notification of [his] ability/status to return to work." (*Id.* ¶ 21 & Ex. 6.) Lee claims that he did as instructed from December 2011 through April 2012. (*Id.* ¶ 22.) He further claims that during one of his weekly calls with Luckey, he attempted to discuss reasonable accommodations to no avail. (*Id.* ¶ 23.) Lee also sent a letter to Cobb while on leave in an attempt

3

to discuss reasonable accommodations but he never received a response (*Id.* ¶ 20.) In a letter dated April 3, 2012, the CTA provided Lee with a second notice of administrative separation. (*Id.* ¶ 24 & Ex. 7.) The letter states in relevant part:

> You have been unable to perform your duties as Transportation Manager . . . since November 12, 2011. You exhausted your [FMLA] entitlement on February 3, 2012. In order to sustain its operations, [the] CTA must proceed to fill your position. Therefore, because you are not available to fill this essential position, you are administratively separated[.]

(*Id.* Ex. 7.) In response, Lee filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶¶ 9, 27.)

In bringing the present ADA claim, Lee claims that, in both 2010 and 2012, the CTA terminated his employment rather than accommodate his disability by extending his leave or providing other reasonable accommodations. (*Id.* ¶ 27.) According to Lee, at no point during his first or second disability leave did the CTA attempt to engage in the interactive process of determining an appropriate accommodation for his disability. (*Id.* ¶¶ 25–26.) Lee further asserts that the CTA discriminated against him by maintaining "an inflexible sick/disability policy and attendance disciplinary policy, which [] provided[] for termination of his employment, [] in violation of the ADA." (*Id.* at 1.)[2] With the present motion, the CTA seeks to dismiss, with prejudice, the third amended complaint in its entirety.

---

[2] Lee's second amended complaint also included a claim for unlawful retaliation. That claim does not appear in the third amended complaint and is therefore not before the Court. Lee's response brief, however, asserts that "[i]f the CTA would not engage in the interactive process, then [he] should not have been terminated for attempting to exercise his ADA rights." (Pl.'s Resp. to Mot. to Dismiss at 3, Dkt. No. 77.) To the extent that solitary statement constitutes an attempt by Lee to state a retaliation claim, such attempt fails because he cannot amend his complaint through his response brief. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Even if the Court were to consider the allegation, it is insufficient to state a claim for retaliation because Lee does not link his allegedly retaliatory termination to any statutorily-protected activity. In other words, Lee has not alleged whether the CTA fired him in response to his request for a reasonable accommodation, the filing of his EEOC charge, or the amendment to his EEOC charge.

**DISCUSSION**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the short and plain statement must meet two threshold requirements. First, the complaint's factual allegations must be sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While a complaint need not contain detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

*Pro se* complaints are construed liberally and held to a less stringent standard than pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013) ("[T]he pleading standards for *pro se* plaintiffs are considerably relaxed[.]"). However, *pro se* plaintiffs are not excused from meeting the basic requirements of Rule 8(a). *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). A *pro se* complaint still must provide fair notice of the plaintiff's claims and at least suggest a plausible right to relief. *See Killebrew v. St. Vincent Health, Inc.*, 295 F. App'x 808, 810 (7th Cir. 2008) (holding that even with liberal construction, the *pro se* plaintiff's

complaint did not even hint at a plausible right to relief and thus failed to satisfy the lenient notice pleading requirement of Rule 8(a)); *see also Srivastava v. Daniels*, 409 F. App'x 953, 955 (7th Cir. 2011) (affirming dismissal of *pro se* plaintiff's complaint that did not comply with Rule 8, where the complaint's length and disjointed nature made it impossible for the district court to identify the specific allegations against each defendant and therefore impossible to determine whether any claims had potential merit).

## I. Qualified Individual with a Disability

To state a claim for discrimination under the ADA, Lee must adequately allege that (1) he has a disability within the meaning of the statute; (2) he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) his employer took an adverse job action against him because of his disability or failed to make a reasonable accommodation. *See Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000). The ADA defines "disability" as a physical or mental impairment that substantially limits one or more major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1).

Nowhere in his third amended complaint does Lee identify his disability. Rather, he simply states that he is a person with a disability as defined by the ADA because he "has a physical and mental impairment that substantially limits one or more major life activities, has a record of such impairment, [or] is regarded as having such impairment." (Third Am. Compl. ¶ 5, Dkt. No. 68.) Such parroting of the statute's definition of "disability" is precisely the type of "formulaic recitation of the elements of a cause of action" that is insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The third amended complaint also includes no additional facts to establish that Lee has a disability within the meaning of the ADA. While the complaint describes two instances of Lee becoming ill at work and references health issues generally, it does not indicate what caused Lee to become ill or provide any details regarding his alleged health issues. Lee cannot state a viable ADA claim without identifying a disability. *See Pierce v. United Parcel Serv.*, No. 01 C 5690, 2002 WL 992624, at *6 (N.D. Ill. May 15, 2002) (dismissing *pro se* plaintiff's complaint for failure to identify a disability while noting that pleading requirements for a *pro se* plaintiff are lenient but do not countenance omitting the disability from a disability discrimination claim). In his response brief, Lee does state that he suffers from sleep apnea, anxiety, and depression. (Pl.'s Resp. to Mot. to Dismiss at 1, Dkt. No. 77.) Perhaps those are the conditions that he contends comprise his disability. But those facts are not alleged in the third amended complaint and, even if they were pleaded there, Lee would still have failed to allege how those conditions substantially limit one or more major life activities. In fact, the third amended complaint does not identify any major life activity that is limited by Lee's health issues; nor does it describe any such limitation.

In short, the third amended complaint fails on the first element of an ADA claim because it does not identify a physical or mental impairment, a major life activity, or a substantial limitation—much less connect those dots as required. *See, e.g., Abdul-Aziz v. Show Dep't, Inc.*, No. 09-cv-7609, 2010 WL 3516157, at *2 (N.D. Ill. Aug. 25, 2010) (granting motion to dismiss, in part, because plaintiff did not allege how his ability to lift his arm had been limited or how that limitation affected his ability to perform the tasks of a warehouse/dock worker); *Mounts v. United Parcel Serv. of Am., Inc.*, No. 09 C 1637, 2009 WL 2778004, at *6 (N.D. Ill. Aug. 31, 2009) (dismissing ADA claim where plaintiffs had not alleged that they suffered from an impairment, let alone an impairment that substantially limited their ability to perform a major life activity).

This failure is fatal to Lee's ADA claim, regardless of whether his claim is based on the termination of his employment, the CTA's alleged failure to provide him a reasonable accommodation, or the CTA's allegedly discriminatory policies.

Lee also fails to satisfy the second element of a claim for discrimination under the ADA: he has made no specific allegations regarding how he is otherwise qualified to perform the essential functions of his job with or without a reasonable accommodation. Like his second amended complaint, Lee's third amended complaint fails to allege what his job duties were, which duties he could perform, and which duties he could not perform due to his health issues. The Court is thus left to speculate regarding the essential functions of a Transportation Manager, whether Lee is qualified to perform those functions with or without reasonable accommodation, and what such accommodation might be.

The only purported "accommodation" even suggested by Lee is found in his response brief, where he intimates that he would have been qualified to perform the duties of Transportation Manager if the CTA had provided him with additional disability leave. But it is well-established that an employee who is unable to work generally cannot perform the essential functions of the job, and thus an extended leave of absence is not a reasonable accommodation that an employer must provide so as to allow the employee to perform those functions. *See, e.g.*, *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948–49 (7th Cir. 2001); *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1004 (7th Cir. 1998) ("The ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence."); *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) ("Inability to work for a multi-month period removes a person from the class protected by the ADA."); *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("A plaintiff whose disability prevents her

from coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes.") (citing *Waggoner v. Olin Corp.*, 169 F.3d 481, 484–85 (7th Cir. 1999)). Therefore, not only has Lee failed to allege that he is an individual with a disability as defined by the ADA, he has also failed to allege that he is a *qualified* individual with a disability under the statute.

As he did in defending his second amended complaint, Lee attempts to place the burden of pleading his claim on the CTA. For example, Lee asserts that the CTA was aware he "was having some type of health issue," and that, if the CTA was unsure whether he has a disability as defined by the ADA, it could have requested information or documentation regarding his disability, functional limitations, and need for a reasonable accommodation. (Pl.'s Resp. to Mot. to Dismiss at 1–2, Dkt. No. 77.) Furthermore, with respect to whether he is qualified to perform the essential functions of his job, Lee argues that "[the] CTA should know the duties of a Transportation Manager" and should not be able to "shift the burden of explaining how [his] medical condition limits his ability to perform his job duties." (*Id.* at 3.)

These arguments by Lee demonstrate a complete disregard for the guidance provided in the Court's memorandum opinion and order dismissing his second amended complaint. (*See* Dkt. No. 66 at 5 n.2.) As clearly stated there, Lee—as the plaintiff in this lawsuit—has the obligation to plead his claim sufficiently regardless of what information the CTA may have had or could have obtained. While his *pro se* complaint must be construed liberally, there is a limit to how much the Court can read into a plaintiff's allegations. That limit has been reached here. The Court could dismiss Lee's claims on this basis alone but will proceed to touch on the additional deficiencies of his complaint.

## II.     Termination of Lee's Employment

Even if Lee had sufficiently alleged that he is a qualified individual with a disability, he cannot establish a *prima facie* case of disability discrimination without pleading facts from which the Court may infer that he was terminated because of his disability. Lee does not allege any facts to support the inference that he was terminated not because of his extended leaves of absence but because of his (unidentified) disability. Nor has Lee alleged that any similarly-situated employee received more favorable treatment or that the CTA's proffered reason for his terminations—in both instances, exhaustion of his FMLA leave—was pretext for intentional discrimination. In short, the complaint contains no factual allegations that plausibly suggest Lee's terminations were discriminatory, *i.e.*, that the CTA would not have fired him but for his disability. *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) ("[A] plaintiff complaining of discriminatory discharge under the ADA must show that his [] employer would not have fired him but for his actual or perceived disability[.]").

## III.    Failure to Provide a Reasonable Accommodation

Lee also alleges that the CTA failed to accommodate him by extending his disability leave or providing other reasonable accommodations. In support, the complaint references a number of attempts by Lee to discuss potential accommodations with various CTA personnel. But Lee does not specify what those accommodations might have been; he only claims that the statement he made to Rutherford on August 16, 2010 regarding his approximate return-to-work date constituted a request for a reasonable accommodation. That assertion suggests, and Lee's response brief makes clear, that the accommodation he sought was extended disability leave.[3] As

---

[3] Lee's response brief contends that modifying workplace policies, including leave policies, is a form of reasonable accommodation. (Pl.'s Resp. to Mot. to Dismiss at 2, Dkt. No. 77.) But the only policy modification suggested by Lee's allegations is one that would allow for an extension of his disability leave.

noted above, however, an indefinite or extended leave of absence is generally not a reasonable accommodation. Lee does not identify any other accommodation that would have allowed him to perform his duties as Transportation Manager. And the CTA's alleged failure to engage in the interactive process of determining an appropriate accommodation is insufficient standing alone to support a viable ADA claim. *See, e.g.*, *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 292 (7th Cir. 2015); *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1059 n.1 (7th Cir. 2014) ("Failure of the interactive process is not an independent basis for liability under the ADA. An employee must still show that she is a 'qualified individual with a disability' and that a reasonable accommodation would have allowed her to perform the essential functions of her job.") (internal citation omitted).

## IV. The CTA's Policies

Lee's third amended complaint alleges that the CTA discriminated against him by maintaining an inflexible sick/disability policy and attendance disciplinary policy that provided for the termination of his employment in violation of the ADA. The complaint goes on to allege that the sick/disability policy "does not provide for reasonable accommodation[] of employees and [] is arbitrary and capricious by subjecting employees to disciplinary action/or administrative termination and deprive [*sic*] employees of their rights protected [by the ADA]." (Third Am. Compl. ¶ 32, Dkt. No. 68.) The CTA argues that Lee's policy-related claim should be dismissed for failure to exhaust administrative remedies because it was not included in his EEOC charge and is not reasonably related to the claims that were included in the charge.[4] Regardless of whether or

---

Again, whether through a policy modification or otherwise, an extended leave of absence generally does not constitute a reasonable accommodation.

[4] According to the CTA, Lee's claim that his disability leave was prematurely terminated should be dismissed for the same reason. (*See* Mem. in Supp. of Mot. to Dismiss at 5–6, Dkt. No. 74.) The Court sees

11

not Lee exhausted his administrative remedies for this claim, this claim fails because Lee has not alleged any facts to show how the CTA's policies discriminated against him because of his disability.

The complaint contains no details regarding the substance of the CTA's policy or on what basis Lee might seek to challenge it. And Lee has pleaded no facts from which the Court can infer that any CTA policy—either on its face or as applied—violates the ADA. Indeed, he does not even make clear whether there is a single policy or multiple policies at issue. Confusing things further, Lee asserts in his response brief that the CTA "relies solely on the FMLA statute concerning sick/disability leave," in that it has a detailed FMLA policy but no ADA policy. (Pl.'s Resp. to Mot. to Dismiss at 3, Dkt. No. 77.) According to Lee, the lack of a detailed ADA administrative procedure allowed the CTA to take arbitrary and capricious action against him each time he was on leave. It is thus unclear whether this claim is based on an allegedly discriminatory policy or on some failure to maintain a policy purportedly required by the ADA. If the Court cannot deduce the nature of Lee's claim from the allegations in his complaint, those allegations are insufficient to give the CTA fair notice of the claim and the grounds upon which it rests.

## CONCLUSION

For the reasons stated above, the CTA's motion to dismiss (Dkt. No. 73) is granted. While *pro se* complaints must be construed liberally, doing so here cannot cure the significant deficiencies that doom Lee's third amended complaint. At this point, Lee has had multiple opportunities to amend his complaint to attempt to state a viable claim. When his second amended

---

no reason to treat that claim separately, as it is encompassed by Lee's other claims, which are based on his allegations that the CTA terminated him rather than extend his leave and that the CTA's policies allowed for such termination.

complaint was dismissed, the Court warned Lee that he would be given only one more chance. As he has again failed to state a claim, his third amended complaint (Dkt. No. 68) is now dismissed with prejudice.

ENTERED:

Dated: November 14, 2016

_____
Andrea R. Wood
United States District Judge